IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ELLIS CARROLL BROWN, III, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.  4:23-cv-00247-AGF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Petitioner Ellis Carroll Brown, III's pro se motion filed under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.  On June 10, 2021, a jury found Petitioner guilty of depriving a citizen of his civil rights while acting under the color of law, in violation of 18 U.S.C. § 242.  This Court sentenced Petitioner to 72 months in prison and 24 months' supervised release.  On October 7, 2022, the Eighth Circuit Court of Appeals affirmed the judgment.  *United States v. Brown*, No. 21-3807, 2022 WL 5320136 (8th Cir. Oct. 7, 2022).

Petitioner now moves to set aside his conviction and sentence on three grounds: (1) his right to a fair trial and due process were violated by this Court due to the exclusion of the following evidence: (a) a St. Ann Police Department Internal Affairs Division Report ("Internal Report"), and testimony by (b) Federal Bureau of Investigation ("FBI") Special Agent Matthew Brummund and (c) defense expert Christopher Tucker; (2) the prosecution of Petitioner violated his Eleventh Amendment rights; and (3) Petitioner's

sentence is unconstitutional.  Petitioner acknowledges that none of these claims was raised on appeal, but Petitioner contends that cause exists to excuse the procedural default because Petitioner's appellate counsel "was ineffective as he refused to raise these grounds per [Petitioner's] request and refuse[d] to notify [Petitioner] of any grounds he ha[d] raised." ECF No. 1 at 4-9.  However, Petitioner makes no independent claim under § 2255 that his trial or appellate counsel was ineffective.

As the record conclusively demonstrates that Petitioner is not entitled to relief, the Court will deny Petitioner's motion without a hearing.

## BACKGROUND

## Criminal Proceedings

### Pre-Trial

Petitioner was indicted on August 5, 2020, and charged with one count of depriving a citizen of his civil rights to be free from unreasonable seizure and unreasonable use of force while acting under the color of law, in violation of 18 U.S.C. § 242.  *United States v. Brown*, 4:20-cr-00380-AGF (E.D. Mo.), ECF No. 1.[1]  The indictment was based on Petitioner's actions as an officer of the St. Ann Police Department when conducting the arrest of Steven Kolb on April 9, 2019.  Specifically, a grand jury found that Petitioner "repeatedly kicked [Kolb] while [he] was compliant and not posing a physical threat to anyone. This offense resulted in bodily injury to [Kolb] . . . ." *Id.*

---

[1]    References to Petitioner's criminal case are designated as "Crim. ECF No. ___"

1.  <u>Motion in Limine to Exclude Internal Report</u>

Prior to trial, the Government filed a motion in limine to exclude from evidence an internal affairs investigation by the St. Ann Police Department into Petitioner's use of force in the arrest of Kolb, and the resulting Internal Report.  Crim. ECF No. 44.  The Government noted in its motion that it was not seeking to exclude the above-noted evidence to the "extent any testifying witness [could] properly be cross-examined about prior statements made in connection therewith."  *Id.* at 1.

The Internal Report did not indicate the date on which it was created,[2] but it was addressed to the Chief of Police, from Commanders Jeffrey Tesdall and Daniel Cowsert. The Internal Report stated that an investigation was opened following a Facebook post on a page entitled "Real StL.News" on April 11, 2019, that described Petitioner's use of force against Kolb.[3]  Crim. ECF No. 44-1.  The Internal Report did not indicate that either Commander Tesdall or Cowsert was personally involved in or witnessed the incident which they were tasked to investigate.

The Internal Report first described actions taken by the investigators to obtain video footage of the incident from businesses located in the area, and to listen to recorded

---

[2]     Although the Internal Report stated "April 11, 2019" on the date line, it did not appear that the report was created on this date because, as discussed below, it elsewhere referred to incidents that took place after that date.  *See* Crim. ECF No. 44-1 at 1.

[3]     The Government attached to its motion in limine a copy of the Real StL News Facebook post, which stated that police were observed by several bystanders to be "beating a man who had obviously already surrendered," referenced cell phone videos taken by bystanders, and included pictures of Kolb's hat and broken glasses on the ground near what appeared to be pools of blood.  Crim. ECF No. 44-3.

radio traffic and view the in-car video from vehicles involved in the incident.[4]  The Internal Report indicated that, although the investigating officers believed that the incident may have occurred within the view of an ATM camera at a U.S. Bank branch location and although the officers formally requested video from that camera, the officers were advised that U.S. Bank would require a subpoena for the footage.  The Internal Report did not indicate that a subpoena was ever submitted or that the ATM video was ever obtained or reviewed by the investigating officers.  Crim. ECF No. 44-1 at 1-2.

The Internal Report also indicated that the investigating officers interviewed the following officers believed to be involved in the incident: Petitioner, Robert Inman, Brandon Means, Kevin Couty, Patrick Martin, Benjamin Freet, Aron Smedley, Daniel Mudd, Chief Bernsen of the Hillsdale Police, Lieutenant Quinn of the North County Police Cooperative, and Officer Hawkins-Byrd of the North County Police Cooperative. *Id.* at 3.

The Internal Report then stated the investigating officers' summaries of the above-noted interviews.[5]  The summaries indicated that none of the officers witnessed the use of force by Petitioner during Kolb's arrest, but that the officers instead observed events before or after the use of force and reported their observations, as well as what Petitioner told them about the incident, to the investigating officers.  *Id.* at 4-5.  The Internal Report

---

[4]     The Internal Report did not indicate that any of the video footage obtained by the investigators actually depicted Petitioner's use of force against Kolb.

[5]     Summaries of the interviews of Petitioner and Martin were redacted from the copy of the Internal Report submitted to the Court, in accordance with *Garrity v. State of New Jersey*, 385 U.S. 493 (1967).

4

concluded that "based on the information gathered during this investigation it has been determined that although force was used in the apprehension of the suspect, there is no evidence that the force used was excessive. This Internal Affair Investigation will be classified as ***Exonerated***." *Id.* at 6 (emphasis in original).

The Internal Report also attached signed statements by some but not all of the above-noted officers,[6] in which the officers stated that they were interviewed by the investigators between the dates of April 12 and April 22, 2019,[7] and they described their involvement in the arrest of Kolb consistent with the summaries described above. *Id.* at 7-24. The Internal Report then concluded with a statement signed by Adrian L. Barry, Internal Affair Division Major, and Chief of Police Aaron Jimenez, dated April 9, 2019[8] that states:

> An Internal Affairs Investigation was conducted concerning the conduct of St. Ann Police Department Detective Ellis Brown . . . , in reference to the level of use of force used to effect an arrest during a pursuit. See St. Ann Police Complaint #19-00427.
>
> **This investigation determined that there is sufficient evidence which indicates the act or incident did occur, but the actions were justified, lawful and proper.**
>
> **As a result, administrative agency action will not be taken as a result of this investigation.**

---

[6]    The Internal Report did not attach statements from Mudd, Bernsen, Quinn, or Hawkins-Byrd.

[7]    One statement is dated April 8, 2019, which appears to be an error because the incident did not take place until the next day, April 9, 2019. Crim. ECF No. 44-1 at 7-8.

[8]    There is no indication that either Barry or Jimenez was personally involved in or witnessed the incident in question, and it is unclear whether they signed the statement on April 9, 2019, which would have been before the above-described officer interviews.

This concludes this Internal Affairs Investigation.

*Id.* at 25-26 (emphasis in original).

The Court heard arguments on the Government's motion in limine to exclude the Internal Report at the final pretrial conference on June 1, 2021. At that hearing, the Government reiterated the arguments made in its written motion, including that the Internal Report consisted entirely of hearsay and was not admissible under the only applicable exception to the hearsay rule, Federal Rule of Evidence 803(8)(A)(iii), as a factual finding from a legally authorized investigation contained within a public record. Petitioner, through defense counsel, responded to the Government's arguments and maintained that the Internal Report was trustworthy and therefore admissible, without referencing a specific rule of evidence.   Crim. ECF No. 173 at 50-53. As Petitioner had not identified any possible hearsay exception except Rule 803(8)(A)(iii), the Court asked defense counsel what, if any, factual findings existed in the Internal Report, so as to bring the report within the scope of Rule 803(8)(A)(iii). Defense counsel responded that the Internal Report only contained a single factual finding, which was that the investigating officers believed that the action occurred but that it did not rise to the level of a violation of law. *Id.* at 53.

After hearing the arguments, the Court granted the Government's motion. The Court held that the Internal Report was hearsay and that no party had suggested any hearsay exception would apply other than Rule 803(8)(A)(iii). The Court then noted factors that the Advisory Committee considers when evaluating whether a public record is admissible as an exception to the rule against hearsay under Rule 803(8)(A)(iii) and

concluded that none of the factors were met other than the fact that the investigation was perhaps fairly timely.  Crim. ECF No. 173 at 55-56.

 Additionally, the Court held that the Internal Report largely consisted of double or triple hearsay and, further, the officers interviewed in the report did not "have anything pertinent to offer" because "[t]hey weren't there when the events occurred."  *Id.* at 57. Next, the Court noted that there were "serious concerns about the trustworthiness of the report" because no bystanders were interviewed, the victim was not interviewed, St. Louis Metropolitan Police Department officers who responded to the scene were not interviewed, and the ATM video that actually depicted the incident was not reviewed.  *Id.* Lastly, the Court held that conclusions in a public record of this type are generally not admissible, the report admittedly contained no factual findings, and the ultimate legal conclusion was irrelevant and would invade the province of the jury.  *Id.* at 57-58.

In summary, the Court granted the motion in limine to exclude the Internal Report because "the report consist[ed] almost entirely of inadmissible hearsay; [did] not meet the requirements of Federal Rule of Evidence (FRE) 803(8); [was] not sufficiently complete to be trustworthy; contain[ed] no factual findings, but rather contain[ed] only an inadmissible legal conclusion; and its probative value [was] outweighed by its prejudicial impact under FRE 403."  Crim. ECF No. 62 at 2; Crim. ECF No. 173 at 55-59.

2.  Motion In Limine to Exclude Defense Expert Tucker

At the pre-trial conference, Petitioner informed the Court and opposing counsel for the first time of his intent to present a "use of force" expert, Christopher Tucker, who had not been previously disclosed to the Government and who had not produced any expert

report.  Crim. ECF No. 173 at 27-28.  The Court expressed skepticism of the permissiveness of such an expert but reserved ruling on the matter until Petitioner informed the Court of exactly how Tucker would testify, including the opinions to be offered and the basis for those opinions.  *Id.* at 28-29, 81-82.

The Government thereafter filed a pre-trial motion in limine to exclude the testimony of Tucker on the grounds that Petitioner failed to provide adequate or timely notice under Federal Rule of Criminal Procedure 16(b)(1)(C).  Crim. ECF No. 70.  Shortly thereafter, Petitioner filed a notice withdrawing his request for Tucker to testify as an expert witness.  Crim. ECF No. 71.  Accordingly, the Court denied the Government's motion at moot.  Crim. ECF No. 72.

Before trial, the Court also confirmed with Petitioner on the record that he agreed with his attorney's decision to voluntarily withdraw his request to introduce expert testimony, as follows:

> THE COURT: First of all, the defendant had filed a notice of an expert witness, Mr. Tucker, which we had discussed a bit, not by identity, at the final pretrial conference. And then I had contacted the parties because I had a little time and thought we would have a hearing on it, although I spent a lot of time working on it over the weekend, and we were advised that the defendant was withdrawing his request to offer an expert witness.
>
> And Mr. Towey, did you, in fact, discuss that matter with your client, Mr. Brown?
>
> MR. TOWEY: Yes, ma'am. I did.
>
> THE COURT: All right. And Mr. Brown, did you have an opportunity to discuss that with Mr. Towey?
>
> THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And do you concur with – do you accept that decision?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And so, you understand that means in the context of your trial, you will have no expert testimony?

THE DEFENDANT: I understand, Your Honor.

THE COURT: And you understand the mere fact that you're not doing it through an expert doesn't mean you can't -- you understand you also will not be able to offer opinion evidence through other witnesses, through other law enforcement officers that your attorney might call?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. You understand that? Have you discussed that with your attorney?

THE DEFENDANT: Yes, Your Honor.

Crim. ECF No. 185 at 19-20.

### **Trial**

Trial against Petitioner commenced on June 8, 2021. The relevant evidence at trial showed the following. On April 9, 2019, Officer Daniel Mudd, employed by the City of St. Ann Police Department, noticed a tan Hyundai near 3609 Dixie while out on patrol. Officer Mudd had been informed earlier that day by detectives, including Petitioner, that the house was being looked into for drug investigations. Officer Mudd initiated a traffic stop of the vehicle, but the Hyundai would not stop, and Officer Mudd engaged in a chase of the vehicle. Crim. ECF No. 186 at 174-77.

While pursuing the vehicle, Officer Mudd was advised over radio by Petitioner that the vehicle was wanted for drug activity and possibly armed with a shotgun. *Id.* at 177. Officer Mudd eventually lost sight of the vehicle, at which point Officer Patrick

Martin, in a different vehicle, took over the lead of the chase. *Id.* at 178; Crim. ECF No. 185 at 173. Officer Martin testified that he did not stay in the lead position and that Petitioner eventually took over the lead. Crim. ECF No. 185 at 175. The vehicle chase came to an end when Officer Martin collided with Petitioner's vehicle, and the vehicle in pursuit also crashed into another car. *Id.* at 180.

After the collision, the passenger of the tan Hyundai, Kolb, exited the vehicle and ran across a parking lot. Officer Martin followed Kolb, and before Officer Martin reached him, Kolb stopped running, put his hands up, and went down to the ground. Once Officer Martin reached Kolb, he slid down to the ground and after seeing Kolb move or attempt to tuck his left hand, secured Kolb's left arm. As Officer Martin was using his body to immobilize Kolb, Petitioner arrived at the location. A third officer, Officer Corey Hawkins-Byrd, then arrived at the scene and handed Officer Martin handcuffs to secure Kolb. *Id.* at 190-207. At the time Officer Hawkins-Byrd handed Officer Martin the handcuffs, Officer Martin was still on the ground over Kolb, had Kolb under control, and was preparing to handcuff him. Officer Martin testified that he did not feel the need to punch or kick Kolb and did not do so. *Id.* at 210.

The jury saw several still photographs and ATM video footage of Petitioner repeatedly kicking Kolb in the face and elsewhere while he was on the ground. Crim. ECF Nos. 185 & 186. Officer Hawkins-Byrd testified that he did not kick, hit, tase, tackle, or use any force against Kolb and did not see the need to do so. Crim. ECF No. 186 at 58-60. Officer Hawkins-Byrd did not witness any kicking by Petitioner because he was more focused on the position of Kolb's hands; however, he acknowledged that the

ATM video, which the Government showed him, showed Petitioner kicking Kolb. *Id.* at 61-64.

Two other officers employed by St. Louis Metropolitan Police Department, Officer Edward Napier and Officer Brian Hayes, arrived on the scene and witnessed Petitioner kicking Kolb, and they intervened. Officer Napier advised Petitioner to "stop" kicking Kolb because he did not feel the kicking was necessary. Officer Hayes testified that he was troubled by the incident. *Id.* at 107-140.

Kolb testified that he ran because he thought he had a warrant against him but that, after he stopped, put his hands up, and laid down on the ground on his belly, he expected to be handcuffed, he did not resist being handcuffed, did not reach for anything, did not attempt to get up, and did not attempt to injure any officers. Kolb did not remember the use of force against him, but he remembered asking officers to stop hitting him at one point, and he suffered four broken ribs, a fractured eye and nose, and a punctured lung as a result of the use of force. *Id.* at 80-82.

Kolb was then carried next to Officer Martin's patrol car and placed on the ground before being removed from the scene. Officer Martin described Kolb's condition as "pretty beat up." Crim. ECF No. 185 at 210. Kolb was transported to St. Ann Police Department, was later taken to DePaul hospital, and was then airlifted to a second hospital at St. Louis University.

Petitioner stated before the opening of his case his desire to call FBI Agent Brummund to the stand to testify to impeach him based on statements made during the grand jury proceeding. The Government, who was not calling Brummund in their case-

in-chief, objected to Brummond's testimony as irrelevant and impermissible under the Federal Rules of Evidence.  Crim. ECF No. 186 at 150-169.

Upon learning of the plan to call Brummund, the Court asked Petitioner's counsel for any caselaw supporting that a grand jury witness's testimony was relevant where that witness was not being called by the Government at trial.  Petitioner could not cite any such caselaw.  The Court held that Brummond's testimony was not admissible.  The Court reasoned that any potential inaccuracies in Brummond's grand jury testimony were irrelevant because the burden of proof at trial was significantly higher.  The Court noted Brummund's testimony could have been relevant if Petitioner's counsel alleged that the grand jury did not have sufficient evidence to indict absent the allegedly inaccurate testimony, or if Brummund was called by the Government to testify and recount information he gave to the grand jury.  However, even in those circumstances, the Court noted it may be improper to adjudicate the matter during trial because its prejudicial effect would substantially outweigh its probative value under Federal Rule of Evidence 403.  The Court thus concluded that Brummond's testimony was not relevant and any minimal relevance would be substantially outweighed by the prejudicial effect of having a minitrial over what the grand jury did or did not hear.  *Id.*

After closing arguments and during jury deliberations, a juror exited the room and did not want to return, stating outside the presence of the parties that she was unable to deliberate further.  When the Court inquired as to the parties' positions regarding the juror's refusal to deliberate, the Government proposed seating an alternate juror  and defense counsel agreed to that proposal on the record.  Crim. ECF No. 187 at 91-97.

12

With neither party objecting, an alternate juror was seated, and the jury returned a guilty verdict. The jury also returned two special findings. First, the jury found that beyond a reasonable doubt, bodily injury occurred. Second, the jury concluded beyond a reasonable doubt that the conduct included the use of a dangerous weapon, namely, shod feet. Crim. ECF No. 84.

### Sentencing

Prior to sentencing, Petitioner filed an objection to the Probation Office's Presentence Investigation Report ("PSR"). Crim. ECF No. 96. Petitioner claimed that the PSR's statement that Kolb was not posing a physical threat at the time he was being kicked was unsupported by the evidence. Petitioner also objected to the offense level computation and argued that: (1) the underlying offense was assault, not aggravated assault; (2) the injuries were bodily injuries but not serious bodily injuries; (3) Kolb was not physically restrained; and thus (4) the total offense level should be 18. *Id.*

At sentencing, the Court heard arguments from both parties and overruled Petitioner's objections. First, the Court noted that the jury had specifically rejected the suggestion that Kolb was posing a physical threat at the time of arrest. Continuing, the Court reasoned that the test for aggravated assault was met, as Kolb had suffered seriously bodily injury, and shod feet qualify as a dangerous weapon enhancement. Crim. ECF No. 133 at 17-18. Lastly, the Court found physical restraint was imposed on Kolb when Officer Martin had him pinned to the ground. *Id.* at 18-19.

After the Court overruled Petitioner's objections, the Court determined that the appropriate offense level was 31, and the advisory guideline range was 108 to 120

months' imprisonment. *Id.* at 20. The Court then considered the sentencing factors under 18 U.S.C. § 3553 and reviewed letters sent on Petitioner's behalf and sentencing memoranda from both parties. *Id.* at 21. After hearing argument from both parties on the § 3553 factors, this Court granted a variance from the low end of the guideline range, imposing a sentence of 72 months' imprisonment followed by two years of supervised release. *Id.* at 30.

The Court reasoned that the variance was justified by a variety of factors. First, the Court noted that Petitioner was no longer a police officer and no longer posed a danger without that power. *Id.* at 32. Second, the Court considered Petitioner's mental health issues with post-traumatic stress disorder, and that Petitioner had a wife, four children, and an expectant child. *Id.* at 32-33. After the Court considered these factors, it concluded that the sentence was "sufficient, but no more than necessary, to achieve the statutory sentencing objective." *Id.* Neither party objected to the consideration of the statutory sentencing factors. *Id.* at 33-34.

## **Appeal**

On direct appeal, Petitioner asserted one argument: that the Court erred by excusing the juror who refused to deliberate because the excusal was not for good cause and violated Petitioner's right to a unanimous verdict under the Sixth Amendment.

The Eighth Circuit ruled that Petitioner had invited the alleged error because he had agreed to allow an alternate to be seated, and Petitioner's counsel did not raise the issue of a hung jury until after an alternate juror was seated. Thus, the court concluded that his argument was without merit. *Brown*, 2022 WL 5320136.

14

While Petitioner's appeal was pending, Petitioner's counsel moved to withdraw because Petitioner was dissatisfied with representation and wanted to pursue ineffective assistance of counsel claims. The court denied counsel's motion but allowed Petitioner to raise his ineffective assistance of counsel claims in a separate pro se brief. However, the court declined to consider these claims, citing caselaw for the proposition that the court does not normally consider pro se claims when the defendant is represented by counsel, and that ineffective assistance of counsel claims are not normally considered "unless a miscarriage of justice would result or a full record on the issues in controversy has already been developed." *Brown*, 2022 WL 5320136, at *2 (quoting *United States v. Miranda-Zarco*, 836 F.3d 899, 901–02 (8th Cir. 2016)).

## **Motion to Vacate**

As noted above, Petitioner now asserts three grounds to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. On Ground 1, Petitioner argues the Court erred by: (a) excluding the Internal Report; (b) barring the testimony of Special Agent Brummund at trial; and (c) excluding the testimony of defense expert Tucker at trial, all in violation of Petitioner's rights to due process and a fair trial. On Ground 2, Petitioner asserts that the Court erred by prosecuting, convicting, and sentencing Petitioner because the conviction violates Petitioner's right under the Eleventh Amendment to qualified immunity. On Ground 3, Petitioner claims that his constitutional rights were violated by the Court's sentence because (a) it lacks sufficient evidence to support a felony conviction, (b) information in the PSR was inaccurate, and (c) the sentence creates disparities when compared to other similarly situated defendants.

Petitioner claims that he did not raise any of these grounds on appeal because his appellate "[c]ounsel was ineffective and . . . refused to raise these grounds per [Petitioner's] request and refuse[d] to notify [Petitioner] of any grounds [counsel] ha[d] raised." ECF No. 1 at 5-7. Petitioner does not assert an independent ineffective assistance of trial or appellate counsel claim or otherwise elaborate on how his counsel was ineffective.

## DISCUSSION

Pursuant to § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974). As such, § 2255 "does not encompass all claimed errors in conviction and sentencing," but only "jurisdictional and constitutional errors." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (citations omitted).

### Petitioner's Claims are Procedurally Defaulted

A § 2255 petitioner's claims are limited by procedural default if they could have been raised on direct appeal but were not. *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994) ("A petitioner simply cannot raise a nonconstitutional or nonjurisdictional

issue in a § 2255 motion if the issue could have been raised on direct appeal but was not.") (citations omitted); *Jennings v. United States*, 696 F.3d 759, 762-63 (8th Cir. 2012) ("[A] petitioner may not raise an issue before the district court for the first time in a § 2255 motion if the issue was not presented on direct appeal from the conviction.") (citing *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir.1997)).

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Jennings*, 696 F.3d at 763 (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

Petitioner failed to raise any of the grounds asserted in his motion to vacate on direct appeal to the Eighth Circuit. Petitioner has not asserted that he is actually innocent, but he claims that he failed to raise these grounds due to ineffective assistance of appellate counsel. Ineffective assistance of appellate counsel can amount to "cause" and "actual prejudice" as to excuse procedural default. *Boysiewick v. Schriro*, 179 F.3d 616, 619 (8th Cir. 1999). However, "[t]o establish ineffective assistance of counsel . . . as cause and prejudice to excuse procedural default, [Petitioner] must show that 'counsel's performance was deficient' and 'that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable.'" *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). This is a high bar which requires Petitioner to show that "counsel's performance was deficient but also that such deficient performance prejudiced [his] defense." *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005).

"[R]eview is particularly deferential when reviewing a claim that appellate counsel failed to raise an additional issue on direct appeal." *Charboneau v. United States*, 702 F.3d 1132, 1136 (8th Cir. 2013). "When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain [an] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006). "[A]bsent contrary evidence, 'we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy.'" *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008) (quoting *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998)). To prove prejudice, Petitioner needs to show that the result of the appeal would have been different had his counsel raised these claims on appeal. *Brown*, 528 F.3d at 1033.

Petitioner has not explained how appellate counsel's strategy could be considered constitutionally deficient. However, on its own review, the Court concludes that each Ground asserted by Petitioner is without merit. Thus, appellate counsel was not ineffective for failing to raise these grounds on appeal, and each ground is procedurally barred. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("[C]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance.").

### Ground 1(a) – Internal Report

Petitioner first asserts the Court erred in excluding the Internal Report from evidence. Had this evidentiary ruling been raised on direct appeal, it would have been reviewed for abuse of discretion, and the Eighth Circuit would have given "substantial deference to the district court's exclusion of evidence if it [did] not unfairly prevent a

18

party from proving its case." *United States v. Copp*, 1 F.4th 573, 576 (8th Cir. 2021) (citing *United States v. Condon*, 720 F.3d 748, 754 (8th Cir. 2013)).

Petitioner could not have shown that the Court's exclusion of the Internal Report was an abuse of discretion. As an initial matter, Petitioner contends in his § 2255 motion that the Internal Report was not hearsay because it was not being offered for the truth of the matter but only to show that Petitioner "could not have acted with willful intent to deprive someone of a constitutional right as he follows his agencies policies and procedures."[9] ECF No. 3 at 3. However, Petitioner did not raise this argument at trial, and he does not currently assert an ineffective assistance of counsel claim for that failure.

In any event, the Court fails to see how the Internal Report could be used to prove Petitioner's lack of intent without first proving the truth of the statements within the Internal Report—that Petitioner in fact followed his agency's policies and procedures. Thus, even if used to prove lack of intent under Petitioner's line of reasoning, Petitioner would be introducing the Internal Report for the truth of the matters asserted.

As the Court concluded before trial, the Internal Report contained at least three levels of hearsay: the report itself, the statements the officers made to the investigators, and the statements Petitioner made to the officers, which were repeated to the

---

[9]     Proof of willfulness under § 242 requires a showing that the defendant "acted with specific intent to deprive [the victim] of his constitutional rights," which includes  "acting in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite." *United States v. Thao*, 76 F.4th 773, 777 (8th Cir. 2023) (quoting *Screws v. United States*, 325 U.S. 91, 105 (1945)). "Therefore, it is enough to trigger § 242 liability if it can be proved—by circumstantial evidence or otherwise—that a defendant exhibited reckless disregard for a constitutional or federal right." *Thao*, 76 F.4th at 777 (citing *United States v. Johnstone*, 107 F.3d 200, 208–09 (3d Cir. 1997)).

investigators. *See United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006). None of these levels of hearsay falls within an exception to the hearsay rule. Indeed, Petitioner has never suggested any hearsay exception applies other than possibly Rule 803(8)(A)(iii), which governs public records in a criminal case offered against the government if those records are factual findings from a legally authorized investigation, and the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

However, the Internal Report does not contain any factual findings, as Petitioner readily admitted at trial. Its only finding is its ultimate conclusion that the force used here was not excessive or was otherwise justified, lawful, and proper. That finding is not one of fact but rather a legal conclusion that invades the province of the jury. *E.g.*, *Akins v. City of Columbia*, No. 2:15-CV-04096-NKL, 2016 WL 4126549, at *14 (W.D. Mo. Aug. 2, 2016) (holding that an internal affairs report conclusion "concerning whether a police officer's conduct conformed to the limits of the Fourth Amendment as interpreted by the judiciary is not a factual finding" but is instead "a legal conclusion and inadmissible hearsay, not covered by FRE 803"); *Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) ("expert testimony on reasonableness of police behavior in light of Fourth Amendment standards is statement of legal conclusions and not admissible").

Further, the hearsay statements within the Internal Report do not fall within any hearsay exception. *See. Taylor*, 462 F.3d at 1026 ("The report contained only a recitation of the citizen's statements to the police. Those statements fell under no exception to the hearsay rule."); *Walker v. Wayne Cnty., Iowa*, 850 F.2d 433, 435 (8th Cir. 1988) (finding

that unsworn police interviews where statements that were not reported verbatim constituted inadmissible double hearsay); *United States v. Ortiz*, 125 F.3d 630, 632 (8th Cir. 1997) (finding that Drug Enforcement Administration reports were inadmissible double hearsay because the report largely recited what an informant told the agent).  For these reasons, the Internal Report was properly excluded, and Ground 1(a) is therefore procedurally barred and without merit.[10]

## Ground 1(b)

Next, Petitioner claims the Court erred in not allowing testimony from Agent Brummund in Petitioner's case in chief.  Petitioner wanted to call Brummund solely to impeach statements Brummund made during the grand jury proceeding.

As noted above, Petitioner could not cite any legal authority establishing the relevance of a grand jury witness's testimony where, as here, the indictment was not

---

[10]     Even if it were not procedurally defaulted, Ground 1(a) is not cognizable under § 2255.  Evidentiary rulings do not ordinarily implicate a constitutional violation unless admission of the evidence "resulted in a trial so fundamentally unfair as to deny [the petitioner] due process of law," considering "totality of the facts in the case and analyz[ing] the fairness of the particular trial under consideration."  *Hobbs v. Lockhart*, 791 F.2d 125, 127 (8th Cir. 1986).  Here, the Government and the Court acknowledged that the Internal Report could be readily used on cross-examination to impeach a witness with any prior inconsistent statements.  And the Internal Report's conclusion regarding whether Petitioner's use of force was justified was introduced by other means to the jury, through the first-hand testimony of officers at trial indicating that they believed Kolb may have at some point attempted to resist arrest by moving or tucking his hand.  Defense counsel argued vigorously at trial that the officers' testimony regarding Kolb's hands being tucked or moved constituted resisting, which justified Petitioner's use of force against Kolb. *E.g.*, Crim. ECF No. 187 at 66-79.  The Internal Report's  conclusion would have merely restated this first-hand testimony and argument.  Exclusion of such cumulative evidence does not render a trial fundamentally unfair. The question was one for the jury to determine, and the jury apparently rejected Petitioner's argument.

being challenged, and the grand jury witness was not being called by the government at trial. Petitioner still has not cited, and the Court has not found, any legal support for Petitioner's argument.

As the Court held at trial, any inaccuracy in Brummond's grand jury testimony was not relevant to the criminal trial itself. Further, calling Brummund to testify simply to impeach his character would have been clearly impermissible. *U.S. v. Roulette*, 75 F.3d 418, 423 (8th Cir. 1996) ("Contradiction of a witness by prior inconsistent statements may be shown only on a matter material to the substantive issues of the trial"); *See Blake v. Cich*, 79 F.R.D. 398, 403 (D. Minn. 1978) (holding that character evidence is only relevant as substantive evidence when character is an issue in the case); *See also United States v. Libby*, 475 F.Supp.2d 73, 83 (D.D.C. 2007) (holding that calling a witness for the sole purpose of impeachment is impermissible). Because the Government never called Brummund to the stand, his character was never at issue in the trial. Allowing Petitioner to call Brummund for the sole purpose of impeachment was impermissible, and an appeal of the Court's ruling regarding Brummond would have been without merit. Therefore, Ground 1(b) is also denied as procedurally defaulted and meritless.[11]

**Ground 1(c)**

Petitioner's claim that the Court erred in excluding defense expert Tucker is also without merit. Most significantly, the Court did not exclude Tucker's testimony, as

---

[11]    Further, as with Ground 1(a), any evidentiary error with respect to Ground 1(b) certainly did not rise to the level of a due process violation, as Petitioner was able to elicit similar testimony to that he hoped to obtain from Brummond  (regarding Petitioner's alleged use of force) through other witnesses.

Petitioner voluntarily withdrew the witness. Crim. ECF. Nos. 71 & 72.  Petitioner does not assert that trial counsel was ineffective for withdrawing his request to introduce Tucker.  Nor could he, as such a claim is squarely contradicted by the record.  As noted above, this Court asked Petitioner if he was consulted about his attorney's decision and if he was aware that this withdrawal meant that he would have no expert witnesses in his case in chief.  Petitioner affirmatively responded to both questions and stated he had no issues with this decision.  And Petitioner makes no claim here that his trial counsel somehow misled him in this regard.  Ground 1(c) will therefore be denied as procedurally defaulted and without merit.

### Ground 2

Petitioner's Ground 2 is also without merit and would have been denied had it been raised on appeal.  Petitioner argues that the Eleventh Amendment entitles him to qualified immunity.  Qualified immunity can be invoked when a government official is sued civilly for damages under 42 U.S.C. § 1983.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages"); *Irish v. McNamara*, 108 F.4th 715 (8th Cir. 2024) ("Qualified immunity provides government officials 'some protection against suits for civil damages.'") (citations omitted).

The Government correctly notes that Petitioner was not civilly sued for damages under § 1983; he was criminally charged and convicted of depriving a citizen of his civil rights while acting under the color of law, in violation of 18 U.S.C. § 242.  However, the Supreme Court has held both § 1983 and § 242 entitle a defendant to a "fair warning that

his conduct deprived his victim of a constitutional right, and that the standard for determining the adequacy of the warning [pursuant to § 242] was the same as the standard for determining whether a constitutional right was 'clearly established' in civil litigation under § 1983." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  The notice requirement under § 242 can be met even in novel factual circumstances.  *Id.* at 739.

Turning to the facts of this case, neither the qualified immunity nor fair warning standard would bar prosecution for Petitioner's actions.  Petitioner was alleged to have repeatedly kicked a suspect who was on the ground and already detained by other officers, resulting in serious injury.

Such actions have repeatedly been found to violate clearly established rights, and Petitioner thus had fair warning that his actions violated Kolb's rights.  *See, e.g.*, *Blazek v. City of Iowa City*, 761 F.3d 920, 999 (8th Cir. 2014) (holding that it was clearly established that grabbing a subdued and compliant detainee by the arms and gratuitously jerking him from the floor onto the bed with enough force to cause significant injury was unreasonable and violated the Fourth Amendment); *Smith v. Kan. City, Mo. Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009) (holding that knocking a non-resisting suspect to the ground violated a clearly established right); *Montoya v. City of Flandreau*, 669 F.3d 867, 872 (8th Cir. 2012) (holding that the severity of the injuries sustained is relevant when determining the reasonableness of a particular use of force).

Therefore, given the governing law and the facts found by the jury that Petitioner kicked Kolb while he was restrained on the ground resulting in serious bodily injuries to Kolb, Petitioner's Ground 2 is without merit and procedurally barred.

**Ground 3**

Petitioner's last ground is that the Court's sentence violated his rights because it lacked sufficient evidence to support a felony conviction, information in the PSR was inaccurate, and the sentence creates disparities when compared to other similarly situated defendants.  As with his other grounds, Petitioner's Ground 3 would not have succeeded on appeal and is therefore procedurally defaulted.

As an initial matter, Petitioner raises numerous new sentencing objections in his § 2255 motion that were not raised at his sentencing and therefore not preserved for appeal. It was certainly a reasonable exercise of appellate strategy to focus on arguable stronger claims than those not properly preserved for appeal.  *E.g.*, *Charboneau v. United States*, 702 F.3d 1132, 1138 (8th Cir. 2013) ("As we explained in *Roe v. Delo,* 160 F.3d 416, 418 (8th Cir. 1998): 'The decision to forgo a plain error claim is usually the result of a reasonable winnowing of weaker appellate claims. Therefore, we rarely conclude that an appellate attorney's performance was constitutionally deficient for not raising such a claim.'").  Therefore, any new sentencing objections on Ground 3 are procedurally defaulted.

To the extent Petitioner raised his Ground 3 claims at sentencing, the Court considered them carefully and rejected them for sound reasons.  An appeal of these claims would have been without merit.

The Eighth Circuit Court of Appeals reviews a sentence in two ways, first, "for significant procedural error; and second, if there is no significant procedural error, . . . for substantive reasonableness."  *United States v. Castillo*, 117 F.4th 1021, 1024 (8th Cir.

2024) (citations omitted).  The court reviews sentencing issues with a deferential abuse of discretion standard.  *Id.*

A procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range."  *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Petitioner's first argument is that his sentence is improper because the underlying conviction is not supported by sufficient evidence.  When the Eighth Circuit reviews the sufficiency of evidence to support a verdict, the court will "uphold [the] conviction unless no reasonable jury could have found him guilty beyond a reasonable doubt."  *United States v. Oliver*, 90 F.4th 1222, 1225.  In Petitioner's trial, there was a plethora of evidence that connected Petitioner to the crime.  The Government introduced video and photographic evidence of Petitioner's actions at the scene, other officers testified as to Petitioner's actions, and the victim, Kolb, testified.  A reasonable jury could conclude from this evidence that Petitioner was guilty beyond a reasonable doubt of depriving a citizen of his civil rights.  The Court committed no procedural error in relying on the jury's verdict to lead to sentencing.

Secondly, Petitioner argues that the sentence is improper because it is based on inaccurate information provided in the PSR.  Several of the alleged inaccuracies Petitioner includes in his § 2255 motion were not raised at sentencing and are therefore

26

procedurally defaulted for the reasons stated above.  As to the arguments Petitioner did raise—for example, that Petitioner did not strike the victim while he was being restrained, that the victim was posing a physical threat, or that there was no use of "shod feet" —the Court previously rejected these arguments at Petitioner's sentencing, and the evidence and caselaw support the Court's ruling.  *See, e.g.*, *Arcoren v. United States*, 929 F.2d 1235, 1246 (8th Cir. 1991) (holding that physical restraint includes restraint beyond being tied, bound, or locked up, and includes preventing a person from leaving); *United States v. White*, 675 F.3d 1106, 1110 (8th Cir. 2012) (affirming the application of a dangerous weapon enhancement based on shod feet where the defendant wore shoes when kicking the victim in the head); *United States v. Steele*, 550 F.3d 693, 699 (8th Cir. 2008) (rejecting the argument that tennis shoes cannot be classified as a dangerous weapon when involved in kicking victim with shod feet).

Lastly, Petitioner asserts that he did not act "willfully" as the PSR states, and that his sentence is disproportionate to similarly situated defendants.  Again, Petitioner's failure to assert these objections at sentencing renders them procedurally defaulted.

In any event, Petitioner does not argue, and has not established, that the Court erred in instructing the jury on willfulness, which the jury found.  As to sentencing disparities, Petitioner received a below-Guidelines sentence comparable to similarly situated defendants.  *E.g.*, *United States v. Palkowitsch*, 36 F.4th 796, 803 (8th Cir. 2022) (upholding a below-guidelines 72-month sentence for a police officer who violated a citizen's right to be free from excessive force and rejecting a similar sentencing disparity

argument).  Therefore, in addition to being procedurally defaulted, these claims on Ground 3 are meritless.

**Evidentiary Hearing**

As noted above, an evidentiary hearing is not warranted in this case as "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also Guzman-Ortiz v. United States*, 849 F.3d 708, 715 (8th Cir. 2017) (holding that a district court may forego an evidentiary hearing before dismissing a § 2255 motion where "accepting the petitioner's allegations as true, the petitioner is not entitled to relief") (citation omitted).

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Petitioner Ellis Carroll Brown, III's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of December, 2025.